JOHN KENNEDY & CO., INC., Plaintiff, *v.* NEW YORK WORLD'S FAIR 1939 INCORPORATED and Others, Defendants.

Supreme Court, Special Term, Queens County, May 2, 1940.

*Margulas & Foreman* [*David Margulas* and *Albert Forman* of counsel], for the plaintiff.

*Lord, Day & Lord* [*Thomas F. Daly, Charles W. Merritt* and *Gordon H. Smith* of counsel], for the defendant New York World's Fair 1939 Inc.

*William C. Chanler, Corporation Counsel* [*Albert Cooper* of counsel], for the defendant City of New York.

*Rosenberg & Rosenberg* [*Herbert M. Rosenberg* of counsel], for the defendant Henry Baumgard, Inc.

WENZEL, J. This is an action to foreclose certain mechanics' liens duly filed by the plaintiff and several counterclaiming defendants.

The property upon which the improvements were made is owned by the city of New York (a defendant herein), and leased by it to the defendant, New York World's Fair 1939 Inc. The latter corporation in turn subleased portions of the property to concessionaires who erected upon their subleased portions the improvements, the building of which gave rise to the filing of these liens. No claim is made of any irregularity in the filing of these liens or the amounts thereof, so that this court has only to consider the questions of law raised by the defendants, New York World's Fair 1939 Inc., and the City of New York.

The Fair Corporation contends as follows:

1. That these structures are not " permanent " structures and that, therefore, the Lien Law is not applicable thereto. It cites in support of its contention the definition of the word " permanent "

as delineated in the " Enabling Act " (Laws of 1936, chap. 544), and the lease between these two defendants. This position is not tenable. The determination of what may be considered a " permanent " improvement in the legislation referred to is for the regulation of the World's Fair and to fix the mutual rights of the city and the fair corporation, and was not intended in any way to affect the Lien Law. The word " permanent " is relative — we have " permanent waves," and we have the Rock of Gibraltar, both of them are but relatively permanent. What is permanent within the purview of the Lien Law has heretofore been definitely determined by the courts (*Gates & Co.* v. *Stevens Constr. Co.*, 220 N. Y. 38, and in this department, *Hilton & Dodge Lumber Co.* v. *Murray*, 47 App. Div. 289), and this court, therefore, finds that these structures were such as to entitle these lienors to file their liens for the erection of " permanent improvements."

2. That even if these improvements are found to be permanent " they are improvements of public property, the construction of which does not give rise to a lien under section 3 of article 2 of the Lien Law." The property upon which the fair is being conducted is unquestionably owned by the city of New York, but it was not during the time in question dedicated to a public use. It was leased by the city to the fair corporation and access thereto might not be had by the public except on payment of an admission fee. Further within the confines of these premises were scores of concessionaires whose object was the making of profit from the patronage of the public attending the fair. The improvements made by these lienors were to the property as a fair ground and not as a public park. Indeed, it is claimed elsewhere by these defendants that these structures are of no use in the contemplated final development of the plot. The fair is not a " public enterprise " and the work done by the lienors was not a " public improvement " in the sense contended for by the city.

3. That the New York World's Fair 1939 Inc., is a membership corporation, incorporated under a special act of the Legislature; that it is a non-profit organization whose functions are of a public character. Apparently it is claimed that it is for that reason free from certain obligations and liabilities visited upon other corporations. It is, of course, in no sense a sovereign body and, therefore, beyond the reach of judicial process; although it calls attention to the fact that it has its own police and fire departments, it is not a municipal corporation, and while it is stated to be a non-profit organization, the Enabling Act under which it is formed and its lease with the city of New York, make reference to what shall be done with surplus moneys. The smile of the President of the

United States and the blessing of the mayor of the city of New York fail to sanctify it, and put it beyond the reach of just claims against it. Indeed, the Enabling Act provides for the distribution of any increment for charitable, scientific and educational purposes after payment in full of all debts and obligations of whatsoever kind and nature.

The court, therefore, finds for the plaintiff and counterclaiming defendants against the " New York World's Fair 1939 Inc.," as to the entire leasehold.

The defenses of the city of New York are that:

1. " The leasehold of the World's Fair is neither assignable, transferable nor subject to execution." It is claimed that the Enabling Act (Laws of 1936, chap. 544) and the resolution of the sinking fund commission, dated June 17, 1936, bestow upon the defendant New York World's Fair 1939 Inc., the sole right to enter into a lease and to conduct a world's fair. That " various anomalous absurdities would ensue were the World's Fair leasehold subject to sale or execution." It contends that with this in mind the legislative mandate provided that " all acts of the Legislature and local laws inconsistent with the provisions of such special code " be automatically suspended. The code referred to (Laws of 1936, chap. 544, § 3) was to be prepared by the Fair Corporation, submitted to the board of estimate and apportionment for approval, and if it was approved by such board, it might by such board be enacted as a " Special Code of Ordinances " governing the area leased to the World's Fair Corporation. Such code was to be effective " in so far as the area to be occupied by the world's fair under the lease is concerned," and was to deal with " health, sanitation and building;" assuming that this provision of the law be constitutional, it was clearly not the intention to give the Fair Corporation or the board of estimate and apportionment the power to suspend the Lien Law or any other general law of the State of New York. The Legislature clearly had not the intention and certainly not the power to create a corporation to conduct a fair with the necessary authority to contract and do business with all and sundry, and yet not be subject to the liabilities incident thereto.

2. " Public property can never be the subject of levy or sale by execution." In support of this contention, the city quotes *Leonard* v. *City of Brooklyn* (71 N. Y. 498) as follows: " In *Darlington* v. *Mayor* (31 N. Y. 164) it is laid down by Denio, J., that property held by a municipal corporation for public use, such as public edifices * * * or the public parks * * * is not subject to seizure and sale on execution." The corporation counsel overlooks the significant words " for public use." As has hereinbefore been pointed out, this property was, during the pendency of this

leasehold, not " in public use." The city is not a sovereign body; it is subject to suit; a judgment may be rendered against it and an execution issue against certain of its properties (Gen. Mun. Law, § 70); only lands and buildings dedicated to and " in public use " are exempt.

Although both the city and Fair Corporation seem here to claim that they are immune to the instrumentalities for the enforcement of the judgments of the courts, both the Enabling Act and the lease between these parties indicate clearly that they were aware of their respective liabilities and the fact that they would be held thereto.

Judgment, therefore, for the plaintiff and each of the counter-claiming defendants against the New York World's Fair 1939 Inc., and the City of New York. Submit findings of fact and conclusions of law on notice.