[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 373 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 374 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 375 
The facts in this case have been stipulated. This is a class action brought by five plaintiffs against the Commissioner of Motor Vehicles, inter alia, to enjoin the revocation of their motor vehicle dealers' licenses and dealers' registrations for failure to comply with the provisions of section *Page 376 
15 of chapter 136 of the Laws of 1946 (R.S. 39:10-19) on the ground of unconstitutionality.
The plaintiffs are New Jersey Used Car Trade Association, a non-profit corporation having a membership of approximately 300 used car dealers; William Grohman, who for the past five or six years has sold only trailers; and three other individuals, Platt, Pennington and Mauro, dealers selling used cars from vacant lots. It is alleged that there are some 1,500 used car dealers in New Jersey and the Commissioner has notified about 300 of them of the proposed revocation of their licenses for the same non-compliance with the aforesaid statute. This suit is brought by plaintiffs on their own behalf and on behalf of all others similarly situated. It is, therefore, precisely the kind of a class action contemplated by Rule 3:23-1 governing civil practice in the Superior Court.
Involved in the litigation is the constitutionality of chapter 136 of the Laws of 1946, known as the "Motor Vehicle Certificate of Ownership Law" and particularly sections 15 and 16 thereof. (R.S. 39:10-19 and 20). The pertinent provisions of section 15, (R.S. 39:10-19), provide "No person shall engage in the business of buying, selling or dealing in motor vehicles in this state, unless he is authorized to do so under the provisions of this chapter. The commissioner (of Motor Vehicles) may, upon application in such form as he prescribes, license any proper person as such dealer. No person * * * shall be eligible to receive a license (unless) each applicant for a license shall at the time such license is issued have established and maintained, or, by said application shall agree to establish and maintain, within ninety days after the issuance thereof, a place of business consisting of a permanent building not less than one thousand square feet of floor space located in the State of New Jersey; to be used principally for the servicing and display of motor vehicles with such equipment installed therein as shall be requisite for the servicing of motor vehicles in such manner as to make them comply with the laws of this State and with any rules and regulations made by the Commissioner of Motor Vehicles governing the equipment, use and operation of motor vehicles within the state." *Page 377 
Section 16, (R.S. 39:10-20), provides that the Commissioner may suspend or revoke the license of a dealer for failure to maintain such a permanent building and equipment as described in the preceding section.
The Commissioner of Motor Vehicles, pursuant to the provisions of the statute, has directed the plaintiffs and a large number of used car dealers who carry on their business from lots without permanent buildings and equipment as provided in the statute, to appear before him to show cause why their licenses should not be revoked and he threatens in the enforcement of the statute to revoke their licenses for non-compliance. The plaintiff, Grohman, who deals only in trailers, has a building with the required 1,000 square feet of floor space on two floors, but he has been threatened with revocation of his license, because the area is not on one floor.
Plaintiffs challenge the constitutionality of the statute on several grounds, but it will suffice for us to consider but two, as follows: (1) that the requirements impose unlawful restraints upon the use of private property and the conduct of legitimate business and that it is an unconstitutional exercise of the State's police power and deprives plaintiffs of their property without due process of law, and (2) that the statute fails to set up any definite standards of conduct and constitutes an unlawful delegation to an administrative authority.
First: The business of selling used cars is a legitimate business and plaintiffs having been for many years duly licensed to engage in that business are entitled to the constitutional safeguards in the continuance of their business, for, as Mr. Justice Oliphant, then Chancellor, said in Kravis v. Hock,136 N.J. Law 161, (E. A. 1947), "The right of a person to work in trade or business is as much a property right as that of a licensed physician to practice his profession." It is apparent that the effect of the enforcement of section 15 would be to drive out of business those used car dealers who carry on their trade or business from lots. A statute having such an effect is in clear violation of both the Federal and State Constitutions.
The problem confronting the court in the instant matter is not new. The application of the principles to various *Page 378 
statutes affecting different businesses has been before the courts of this state in recent cases. Watchung Lake, Inc. v.Mobus, 119 N.J. Law 272 (Sup.Ct. 1938); Regal Oil Companyv. State, 123 N.J. Law 456 (Sup.Ct. 1939); State v.Garrubo, 124 N.J. Law 19 (Sup.Ct. 1940); N.J. Good Humor,Inc. v. Bradley Beach, 124 N.J.L. 162 (E. A. 1939). The general rule was succinctly stated by the United States Supreme Court in Lawton v. Steele, 152 U.S. 133, 38 L.ed. 385,14 Sup. Ct. 499, thus:
"To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."
In New Jersey Good Humor, Inc. v. Bradley Beach, supra, Mr. Justice Heher speaking for the Court of Errors and Appeals said:
"The restraints and regulations imposed for the general good and welfare must needs have the virtue of reasonableness. There cannot be in the name of police regulation, an unreasonable and oppressive curtailment of personal or property rights. * * * And it goes without saying that an exertion of the public power, affecting personal and property rights, is nugatory unless made in good faith for the attainment of a public object within its cognizance. If the dominant purpose be the service of private interests under the cloak of the general public good, it must be adjudged a perversion of the power."
In Regal Oil Co. v. State, supra, Mr. Justice Perskie speaking for the Supreme Court said:
"The legal principles involved are rather well established. While it is true that a state may, in the exercise of its police power, pass legislation for the purpose of protecting and regulating public health, public safety, public morals, general welfare * * *, including public convenience or the general prosperity * * *, it is equally true that this power is not without limitations. The means adopted must be reasonably adapted to the accomplishment of that end, and must not be arbitrary or oppressive. * * * In other words, the legislation must bear a real and substantial relation to the public health, safety, morals or some other phase of general welfare. * * * Thus *Page 379 
a regulation which in effect denies or unreasonably curtails the common right to engage in a lawful business cannot be sustained under the Fourteenth Amendment. For as was said in New State IceCo. v. Liebmann, 285 U.S. 262, 278, 76 L.ed. 747, 754, `* * * nothing is more clearly settled than that it is beyond the power of a state, "under the guise of protecting the public, arbitrarily to interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them."'" See cases cited.
Tested by the foregoing principles, it seems apparent that the restrictions imposed by the statute are an unreasonable clog upon the conduct of plaintiffs' business and bear no reasonable relation to the lawful objects of legislation. The statutory requirement for the building has no relation to the public health, morals or general welfare; it imposes an arbitrary restriction upon the use of land and constitutes an unreasonable, and hence unlawful, interference with the ownership of private property and the conduct of business. Moreover, the statute requires that there be installed in the premises equipment "requisite for the servicing of motor vehicles." The complaint alleges, and from common knowledge we may infer, that this mandate compels a dealer, who in effect is a merchant, to engage in a service occupation, which is not necessarily incidental to the conduct of his business. Certainly to compel him to engage in such servicing as a condition to the continuance of his license is not within the lawful province of the legislature.
Second: It is entirely at rest in this state "that the statute establish a sufficiently basic standard — a definite and certain policy and rule of action for the guidance of the agency created to administer the law." State Board of Milk Control v. NewarkMilk Co., 118 N.J. Eq. 504 (E. A. 1935); Hoboken v.Martin, 123 N.J. Law 442 (E. A. 1939); Finn v. Clifton,136 N.J. Law 34 (E. A. 1946); Steiker v. Borough of EastPaterson, 61 A.2d 215 (E. A. 1948). In the statute under consideration no plan or standard is found to guide or control the Commissioner of Motor Vehicles. Indeed the standards for administrative action are indefinite. While R.S. 39:10-2 contains definitions of various phrases and terms used in the statute, there is no definition of, or specification of requirements for, "a permanent building," nor with respect to *Page 380 
the equipment to be installed therein. The word "permanent" has no fixed meaning; it is a relative term. John Kennedy Co. v.N Y World's Fair, 20 N.Y. Supp. (2d) 934-6,174 Misc. 729. If it were lawful for the Legislature to compel the establishment and maintenance of a building, it would be reasonable for the Legislature in the public interest to specify, for example, that the building be "fireproof"; but the mere demand that the building be "permanent" without any specification or direction to the administrative officer as to what shall constitute "a permanent building" is vague and invalid. In so far as the plaintiff, Grohman, is concerned, it appears that he conducts his business in a building containing the requisite 1,000 square feet on two floors, which the Commissioner deems in violation of the statute for the reason that the area is not on one floor, and Grohman is threatened with revocation of his license. It will be observed that the statute makes no specification such as the defendant asserts.
Therefore, the standards for administrative action are so indefinite as to constitute an unlawful delegation of legislative power.
Defendant argues that plaintiffs have waived the provisions of the act and are now estopped from attacking it, because in the applications filed by the plaintiffs for renewal of their licenses there is contained an agreement to comply with the act. The application forms are by statute prescribed by the Commissioner. The defendant may compel performance of constitutional statutory mandates, but not of unconstitutional provisions. Indeed, it would be inequitable, if not illegal, for the defendant to revoke a license for failure to perform an act, the performance of which the defendant has no lawful authority to demand. To accept the defendant's contention would be an extension of the doctrine of waiver and estoppel contrary to equity and public policy. Cameron v. International, c., Union,No. 384, 118 N.J. Eq. 11 (E. A. 1934).
The provisions of R.S. 39:10-19 and 20 in so far as they require the maintenance and establishment of a permanent building and the installation of servicing equipment and the revocation *Page 381 
of licenses for failure to comply, are unconstitutional. For the foregoing reasons, a judgment will be entered restraining the defendant from revoking the plaintiffs' licenses.