[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 334 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 335 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 336 
The complaint in this cause is filed under the Declaratory Judgment Act to determine the constitutionality of Chapter 350 of the Laws of 1948 which amended certain sections of the act concerning optometry, R.S. 45:12-1 et seq., which complaint also seeks the injunctive remedy against the enforcement of certain sections of the act.
The immediate contest before the court is provoked by the court's order to show cause why the New Jersey State Board of Optometrists should not pendente lite be restrained from enforcing the provisions of the act, as amended. The Attorney General of the State, appearing for the defendant Board, moves to strike the complaint. The grounds advanced by the Attorney General for striking the complaint are (a) that the suit is one against the State of New Jersey, to the institution or maintenance of which suit the State has not consented; (b) that the action is in violation of the Rules of Civil Practice 3:81-1 to 3:81-14; (c) that the statute complained of is constitutional; (d) that the complaint sets forth no cause of action; and (e) the availability of an adequate legal remedy.
It is the Attorney General's contention that since the New Jersey State Board of Optometrists is an agency of the State, this suit in effect is one against the State. Concededly the State is not suable in its own courts without its consent if the judgment obtained will operate to control the action of the State or subject it to liability. Strobel Steel Construction Co. v.State Highway Commissioner, 120 N.J.L. 298, 198 A. 774. But this suit stands the stated test and is therefore not such action as is embraced within the rule. It is a suit to restrain the New Jersey Board of Optometrists from enforcing the provisions of a legislative enactment which the plaintiffs condemn as an unlawful interference with the *Page 338 
rights of property constitutionally guaranteed to them. Such suits, however, are not considered suits against the State but suits against individuals charged with the enforcement of the enactment. Smyth v. Ames, 169 U.S. 466, 42 L.Ed. 819; Exparte Young, 209 U.S. 123, 52 L.Ed. 714.
In Greene v. Louisville I.R. Co., 244 U.S. 499,61 L.Ed. 1280, which was a suit brought by the Board of Valuation and Assessment for the State of Kentucky against the Louisville Railway Company, one of the motions to dismiss in that case was based on the ground that the suit was essentially against the State of Kentucky and was not, therefore, maintainable. Mr. Justice Pitney delivering the opinion for the United States Supreme Court said:
"A fundamental contention of appellants is that the present actions, brought to restrain them in respect of the performance of duties they are exercising under the authority of the state of Kentucky, are in effect suits against the state. Questions of this sort have arisen many times in this court, but the matter was set at rest in Ex parte Young, 209 U.S. 123, 150, 155,52 L.Ed. 714, * * * where it was held that a suit to restrain a state officer from executing an unconstitutional statute, in violation of plaintiff's rights and to his irreparable damage, is not a suit against the state, and that `individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, * * * may be enjoined by a Federal court of equity from such action.'"
Suits like the one presented before the court have been maintained in our equity courts. Equitable Beneficial Ass'n v.Withers, 122 N.J. Eq. 134, 192 A. 511; Howard CompanyJewelers v. New Jersey State Board of Optometrists,133 N.J. Eq. 4, 29 A.2d 742; New Jersey Used Car Trade Ass'n v.Magee, 1 N.J. Super. 371, 61 A.2d 751.
Rule 3:81-8 provides that review of the final decision or action of any state administrative agency shall be by appeal to the Appellate Division. Rule 3:81-10 provides that review of the validity of any administrative rule promulgated by and state administrative agency shall be by petition for a declaratory judgment addressed to the Appellate Division. Neither of these rules apply in the instant controversy. The complaint does not seek a review of any final decision or action *Page 339 
of the Board or of the validity of any of its rules. It seeks a declaratory judgment as to the constitutionality of the statute and an injunction against its enforcement.
Plaintiffs do not challenge the rightful power of the State to regulate the practice of optometry, nor can they reasonably raise that question now. The point is settled by N.J. State Board ofOptometrists v. S.S. Kresge Co., 113 N.J.L. 287, 174 A. 353, where it was said:
"* * * The right to practice medicine, and kindred professions for the treatment of human ailments, is subject to the paramount power of the state to impose such regulations, within constitutional limits, as may be required to protect the people against ignorance and incapacity, as well as deception and fraud. The state, in the exercise of the police power, has the undoubted right to regulate the practice of such professions for the protection of the lives and health of the people. It may prescribe that only persons possessing the requisite qualifications of learning and skill shall practice these professions. But the laws adopted must be reasonable and appropriate to that end. Dent v. West Virginia, 129 U.S. 114,9 Sup. Ct. 231, 32 L.Ed. 623; Lambert v. Yellowley,272 U.S. 581, 47 Sup. Ct. 210, 71 L.Ed. 422; Graves v.Minnesota, 272 U.S. 425, 47 Sup. Ct. 122, 71 L.Ed. 331."
While the State's power to regulate those professions which touch or concern the health or welfare of its citizens is clear and long established, that power is nonetheless subordinate to the rule of reason. It must not be exercised capriciously, arbitrarily or oppressively. The employment of the power must always be reasonably related to legitimate ends sought to be attained. In Regal Oil Co. v. State, 123 N.J.L. 456,10 A.2d 495, it was held:
"* * * While it is true that a state may, in the exercise of its police power, pass legislation for the purpose of protecting and regulating public health, public safety, public morals, general welfare * * * it is equally true that this power is not without limitations. The means adopted must be reasonably adapted to the accomplishment of that end, and must not be arbitrary or oppressive. * * * In other words, the legislation must bear a real and substantial relation to the public health, safety, morals or some other phase of general welfare. * * *"
The complaint challenges paragraphs 1, 3, 4, 6 and 7 ofChapter 350, Laws of 1948, as not being reasonably necessary *Page 340 
for the protection of the public health, safety, morals or the general welfare and as being arbitrary and oppressive.Paragraph 1 of Chapter 350 amends former R.S. 45:12-1. The only change made by the amendment is that optometry is declared to be a "profession." Of this legislative pronouncement the plaintiffs are critical but the court perceives no merit in their viewpoint. Optometry can hardly be regarded as a trade or handicraft. Since it involves the study of the structure, functions, deficiencies and corrections of the human eye, it bears a direct effect upon and relationship to the health of the human body and is in kinship to the profession of medicine. It is truly a profession, possesses attributes of higher learning and merits being elevated above the ordinary standards of the market place. A profession is generally defined to be an occupation that involves a liberal schooling or its equivalent in practical education and calls for mental rather than manual effort. In a more restricted sense it has been applied only to the learned professions of divinity, law and medicine. In a broader sense it has been applied to many other occupations, such as dentistry, accountancy, pharmacy, and several more. All of these have for many years been regulated under state authority. Optometry requires a liberal education in respect of man's most priceless possession — that of sight — and its recognition and declaration by the Legislature as a "profession" would seem to be well within the proper sphere of the State's police power.
Paragraph 3 amends former R.S. 45:12-9. Originally this section only provided for annual registration, fee and failure to renew. As amended this section in addition provides for nonactive registration certificates for those not practicing within the State. It also provides for the issuance by the Board of branch office registration certificates to active licensees when in its discretion such action serves the public interest and it limits to two the number of such certificates to be issued to any one licensee.
It is within the power of the Legislature to require optometrists to be registered with the Board and it is also a reasonable regulation to require the registration of branch *Page 341 
offices, but it is not a reasonable regulation to limit the number of such branch offices. Such a regulation in effect prohibits an optometrist from practicing elsewhere than at his main office and his two branch offices. In Regal Oil Co. v.State, supra, at p. 461, the court said:
"* * * Thus a regulation which in effect denies or unreasonably curtails the common right to engage in a lawful business cannot be sustained under the 14th Amendment. For as was said in NewState Ice Co. v. Liebmann, 285 U.S. 262, 278, 76 L.Ed. 747,754, `* * * nothing is more clearly settled than that it is beyond the power of a state, "under the guise of protecting the public, arbitrarily (to) interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them."' Jay Burns Baking Co. v.Bryan, 264 U.S. 504, 513, 68 L.Ed. 813, 32 A.L.R. 661,44 S.Ct. 412, and authorities cited * * *."
No persuasive reason has been shown, and none is perceived by the court, why or how this limitation on the number of branch offices is required in promotion of the public health or interest. The other professions in this State have not been subjected to like restriction, undoubtedly for the very good reason that such measures are not required to protect or advance the public welfare. If a doctor or dentist may maintain as many offices as his practice, actual or only hoped for, dictates, why not the optometrist? This differentiation, resulting from the provision under discussion, would seem to be unreasonable and untenable discrimination and to the extent here pointed out — and only to that extent — paragraph 3 is held to be unconstitutional as an unreasonable exercise of the State's police power.
Paragraph 4 amends former R.S. 45:12-11. This section provides for the revocation of certificates of license and for preferring charges against those who offend against the provisions of the act. The amendment provides many more causes than the original act for which a license may be revoked. Without setting forth all of the subdivisions of this section, suffice it to say that subdivisions a, b, c, d, e, f, g, l and m are considered reasonable regulations designed to protect the public health and safety and need no special comment.
Subdivision h forbids: "False, fraudulent or misleading *Page 342 
advertising of the practice of optometry or of any art, skill, knowledge, method of treatment or practice pertaining thereto;provided, however, that nothing herein contained shall be construed to prohibit any person licensed under the provisions of this chapter to issue appointment cards to his patients, when the information thereon is limited to matter pertaining to the time and place of appointment and that permitted on the professional card, or to display the name of the licensee on the premises where he is engaged in the practice of his profession upon the windows or doors thereof and by doorplates, or name or office directory when the information is limited to that of the professional card; but the name and title of the licensee and the other information used shall not be displayed in lettering larger than four inches in height for street-level offices nor larger than six inches in height for offices above street-level and shall not be illuminated except during his office hours, and under no circumstances by any colored or neon lights, nor shall any eyeglass or eye sign, whether painted, neon, decalcomania, or any other, either in the form of eyes, or structure resembling eyes, eyeglass frames or eyeglasses or spectacles, be displayed in any manner."
Regulations such as are contained in this subdivision are considered reasonable and within the province of the Legislature to impose. It cannot be doubted that the State may legislate to prevent false, fraudulent or misleading advertising of the practice of optometry. A somewhat similar statute pertaining to dentistry was considered in Semler v. Oregon State Board ofDental Examiners, 294 U.S. 608, 55 S.Ct. 570,79 L.Ed. 1086, and was held to be constitutional. That statute regulated certain types of advertising including illuminated signs or signs containing as a part thereof the representation of a tooth or bridge work or any portion of the human head. The subdivision here permits illuminated signs during office hours (when they are of some service) and prohibits illumination at all other times (when they can serve no purpose other than plain advertising). It also prohibits the display of eyeglass or eye sign or any sign in the *Page 343 
form of eyes, or structure resembling eyes, eyeglass frames or eyeglasses or spectacles. It is appropriate that the edict against such character of advertising in the profession of dentistry shall be legislatively invoked and applied to the profession of optometry. The least that may be said for the regulation is that it is designed to elevate the tone of the profession and to enhance its standing in respect of public confidence and esteem. A neon sign may be appropriate at the entrance of a saloon or night club but it surely does not comport with that dignity and self-respect which the public has a right to expect and demand from its professional classes. In the above cited case the Supreme Court said:
"The state court defined the policy of the statute. The court said that while, in itself, there was nothing harmful in merely advertising prices for dental work or in displaying glaring signs illustrating teeth and bridge work, it could not be doubted that practitioners who were not willing to abide by the ethics of their profession often resorted to such advertising methods `to lure the credulous and ignorant members of the public to their offices for the purpose of fleecing them.' * * *
"We do not doubt the authority of the State to estimate the baleful effects of such methods and to put a stop to them." See, also, Levine v. State Board of Registration, etc., 121 N.J.L. 193, 1 A.2d 876. Sub-division h is unobjectionable.
What has been said concerning subdivision h applies to the provisions of subdivision i. The requirement is that the use of the title "doctor" be qualified by the use of the word "optometrist." The virtue of this regulation is that it is both informative and protective. If enforced, the regulation will prevent the charlatan from palming himself off to the careless or ignorant as a general medical practitioner or even as a specialist in some field other than his own.
Subdivision j forbids: "Displaying any spectacles, eyeglasses, eyeglass or spectacle frames or mountings, goggles, lenses, prisms, spectacle or eyeglass cases, ophthalmic material of any kind, optometric instruments, or optical tools or machinery, or any merchandise, material, or advertising of a commercial nature in office windows or reception rooms or in display cases outside of the offices, where the display of such *Page 344 
merchandise, material or advertising would make it visible from the street."
It might be said that such display would be helpful to the public rather than harmful. It would not be amiss for the court to take judicial notice of the fact that eyeglass frames are of many and varied types. It is conceivable that a prospective wearer of eyeglasses could make his selection from such a display without the trouble or inconvenience of entering upon the premises to do so. It is not perceived how the provisions of this subdivision are necessary for the protection of the public health, safety, morals or general welfare or bear any real or substantial relation to them. The same may be said of subdivision k, which prohibits the display of the licensee's licenses, diplomas or certificates in such manner that they may be seen from the outside of the office. It would seem that here again the prohibited display would be beneficial to the public in that prospective patients would have an opportunity to inform themselves of the optometrist's qualifications before entering his office and engaging his service. While a diploma is hardly conclusive proof of adequacy of talent and too often indicates in practice nothing more than an opportunity once available, yet its outside exhibition can work no harm to the public. Whatever one may think of the want of good taste in so displaying one's diploma that it may be seen from the street, such conduct in no way can injure the public and its interdiction is not within the State's police power.
Subdivision n forbids: "The continuance of an optometrist in the employ of, or acting as an assistant to optometrists or any optometrist, either directly or indirectly, after he has knowledge that such optometrists or optometrist is violating the laws of New Jersey concerning the practice of optometry." This is a reasonable regulation. Since from what has already been said it cannot be questioned that it is within the power of the State to provide for revocation of the license of a licensee who violates the law concerning the practice of optometry, it is also within the power of the State to enact that no optometrist shall continue in the employ of or *Page 345 
assist an optometrist after he has knowledge that the employer is violating the law concerning the practice of optometry. Cf.Taber v. State Board, etc., Dentistry, 137 N.J.L. 161,59 A.2d 231. Such regulation is for the benefit of the public health and safety. The forbidden association may not only prove corrupting but may have other far-reaching effects in the direction of evil, to the injury of the public. To the employee, particularly if he be a novice, the regulation is more directly effective than a prayer not to be led into temptation; it is a strong barrier against such temptation.
Subdivision o forbids: "Any conduct which, in the opinion of the board, is of a character likely to deceive or defraud the public. * * *" This subdivision sets up no standard of conduct. It is vague and uncertain. The phrase "of a character likely to deceive or defraud the public" is nowhere defined in the statute. The phrase itself establishes no norm by which the best disposed practitioner could avoid the pitfalls of possible violation and prosecution. In Cherry v. Board of Regents of University,289 N.Y. 148, 44 N.E.2d 405 (Court of Appeals of N.Y.), it was held that "The Legislature, of course, could not grant to an administrative board or quasi-judicial tribunal power to impose such a penalty upon a dentist for act or conduct not defined in advance. That would be contrary to our basic concepts of justice. Nor could it delegate to the Board of Regents legislative power to define, in accordance with an unfettered discretion, the acts or conduct which, in the opinion of the Board, would justify disciplinary action against a dentist." The subdivision here under consideration is invalid. It delegates to the Board of Optometrists unlimited discretion and power to define and determine the acts or conduct which in its opinion constitutes a violation which would justify revocation of a license.
Paragraph 6 amends former R.S. 45:12-19. This section of the act deals with illegal practices and originally provided that no person not a holder of a certificate of registration shall practice optometry within the State and no person shall falsely personate a registered optometrist. The amendment adds the following: *Page 346 
"* * * No person shall directly or indirectly for himself or others do or engage in any acts or practices specifically prohibited to duly registered optometrists by the provisions of section 45:12-11 of this chapter.
"No person shall peddle spectacles, eyeglasses or lenses or practice optometry from the house to house or on the streets or highways notwithstanding any law providing for the licensing of peddlers. This shall not prohibit, however, an optometrist from attending, prescribing, and furnishing spectacles, eyeglasses or lenses to a person who by reason of an illness, or physical or mental infirmity is confined to his place of abode, or to a hospital or other institution."
If it is within the power of the State in regulating the practice of optometry to prohibit registered optometrists from doing certain acts or practices, then clearly such power extends to those who are not registered optometrists.
The sale in itself of spectacles, eyeglasses or lenses is not prohibited by the act. N.J. State Board of Optometrists v. S.S.Kresge Co., supra. The amendment does not generally prohibit their sale. It provides that no person shall peddle them or practice optometry from house to house or on the streets or highways. It is apparent that the object of this legislation is the protection of the public from the unscrupulous salesmen and unethical optometrists who may prey upon the unwary and unsuspecting householder and pedestrian. This is considered a reasonable regulation having a direct and reasonable relation to the health and welfare of the public. Harris v. State Board ofOptometrical Examiners, 135 A. 237, 287 Pa. 531.
Paragraph 7 of Chapter 350, R.S. 45:12-18.1 provides:
"The record of an optometrist of the examination of a patient, including patient's name, address, age, occupation, and all findings and pertinent facts concerning the patient discovered and disclosed during the course of such examination, as well as the record of professional services rendered and the fees charged therefor shall, because of the confidential nature in the relationship, be the exclusive property of the optometrist who rendered the professional services to the patient. Any unauthorized use by any other person, firm or corporation of the information contained therein shall constitute an infringement of the property rights of the patient and the optometrist, and shall subject the offender to a civil suit for damages by the person aggrieved." *Page 347 
This section of the statute merely restates what always has been considered to be the law with respect to a physician's record of his examination of a patient. It is probably because of this that little has been written upon the subject. Research discloses only one case, McGarry v. J.A. Mercier Co.,272 Mich. 501, 262 N.W. 296, 100 A.L.R. 549, touching one phase of the subject. In that case it was held that in the absence of an agreement to the contrary X-ray negatives are the property of the physician or surgeon who had them made incident to treating a patient notwithstanding the cost thereof was charged to the patient. It would logically follow that the same rule should apply to any record obtained by the physician as a result of examination and treatment. In respect to such records the same rule should apply to optometrists as applies to physicians. This section is a valid regulation and is altogether free of constitutional transgression.
On the whole, the act under attack in this action is legislation of a most salutary and constructive character, the beneficiaries of which are not alone the people of the State but also the very practitioners whom the act undertakes to police. The profession itself has expressed its need for and approval of the regulations here considered. Two hundred and eighty-seven optometrists of this State intervened in this action and by their counsel urged the constitutionality of the act which controls their conduct. While such expression is wholly uninfluential in the consideration of the legal questions raised in the case, it nevertheless reflects the re-action of those immediately and most directly affected by the regulatory and prohibitory features of the legislation under attack. Not only are they not aggrieved but their effort in this litigation has been to have the act sustained so that they themselves and their profession might enjoy the benefits flowing from proper State regulation and surveillance.
The Attorney General's motion to dismiss the complaint is denied. On the other hand, there appears no imperative need for any preliminary injunction against the defendant Board. The court feels confident that until final hearing the *Page 348 
defendant will not attempt to enforce those several provisions of the act which the court has in this opinion found to be unconstitutional and therefore unenforceable. Nor can there be any final declaratory judgment at this stage of the proceedings. That matter will be considered and disposed of at final hearing. Present order in accordance with the foregoing conclusions.