This is an appeal from a judgment of the Recorder's Court convicting the appellant of violation of section 811 of the Zoning Ordinance of the Borough of Point Pleasant Beach.
The appellant is the owner of property used for amusement purposes and located at the boardwalk near Arnold Avenue in the Borough of Point Pleasant Beach. From 1941 to 1945 a ferris wheel and "kiddie rides" were located at the premises. In 1945 the ferris wheel was discontinued and, thereafter, kiddie rides, including a "kiddie whip," were operated. On March 18, 1948, the appellant obtained a permit authorizing an extension of the platform on which the kiddie rides had been operated and, thereafter, began constructing an "adult whip" which was substantially completed by May 12, 1948. On May 13, 1948, the borough adopted an amendatory ordinance which revised its zoning requirements and embodied a new paragraph designated as section 811 and reading as follows:
"Section 811: All businesses, except parking lots, tennis courts, miniature golf courses and miniature railways, shall be conducted under cover of permanent buildings constructed according to the requirements of this ordinance and all other ordinances of the *Page 224 
Borough of Point Pleasant Beach. No part of the business operation including the areas used by persons patronizing said business shall be in the open."
On July 9, 1948, a complaint was filed in the Recorder's Court charging the appellant with violating section 811 by operating its adult whip "in the open and not under cover of a permanent building." The appellant did not dispute that it operated its adult whip in the open but contended before the recorder that section 811 was invalid. It introduced evidence that kiddie rides and adult whips were almost invariably operated in the open throughout the country; that to attempt to place them under cover of permanent buildings would result in increased concentration of noise, exclusion of sun and air and "wouldn't be healthy;" that its premises joined the boardwalk at Point Pleasant Beach in an area devoted primarily to "concessions and amusements;" and that a substantial number of the businesses adjoining the boardwalk were conducted, entirely or in part, without the cover of permanent buildings. No evidence to the contrary was presented by the borough which asserts in its brief that section 811 "is admittedly directed against the unsightliness of open air business operations, whether it be the sale of hot dogs from a wash tub on a vacant lot, the selling of merchandise from open air stands, or the operation of the appellant's amusement device in the open."
The municipality's restriction on the use of appellant's property, whether it be grounded upon its zoning authority (R.S. 40:55-30 et seq.), or other permissible exercise of the police power, (R.S. 40:52-1), must have reasonable relation to the public health, safety, or general welfare. See Pfister v.Clifton, 133 N.J.L. 148, 152 (Sup. Ct. 1945). While the authority to regulate for the general welfare has been said to be broad enough to include regulations for the promotion of the public convenience and the general prosperity as well as those for the health, morals, and safety of the public [see Mansfield Swett, Inc., v. West Orange, 120 N.J.L. 145, 154 (Sup. Ct.
1938)], our courts have been reluctant to extend it to encompass instances where sightliness is the only *Page 225 
justification advanced. See Passaic v. Paterson Bill PostingCo., 72 N.J.L. 285 (E. A. 1905); Vassallo v. Orange,125 N.J.L. 419 (E. A. 1940); Pfister v. Clifton, supra.
In Murphy v. Town of Westport, 131 Conn. 292,40 A.2d 177, 156 A.L.R. 568 (Sup. Ct. of Err. 1944), Chief Justice Maltbie collected the pertinent cases and pointed out that although the earlier decisions nullified regulations designed predominately with regard to aesthetic considerations, there are some recent persuasive decisions to the contrary. Much can be said for the view implicit in his opinion that it is in the public interest that our communities, so far as feasible, should be made pleasant and inviting and that primary considerations of attractiveness and beauty might well be frankly acknowledged as appropriate, under certain circumstances, in the promotion of the general welfare of our people. Compare the dissenting opinion inBrookdale Homes, Inc., v. Johnson, 126 N.J.L. 516, 521 (E. A. 1941), where Mr. Justice Heher stated that, "Police regulation on esthetic grounds is generally deemed to be an invasion of the right of private property, but it would seem that on principle such is within the police power if so far promotive of the interests of the public at large, through the resultant community development and profit, as to outweigh the incidental restraint upon private ownership." It seems to us that the recent decision by our Supreme Court, without dissent, in DuffconConcrete Products, Inc., v. Borough of Cresskill, 1 N.J. 509,64 A.2d 347 (Sup. Ct. 1949), represents a wholesome and comparable departure in related direction.
We are not prepared to say that the Borough of Point Pleasant Beach would be wholly helpless in meeting the problem which might result from unrestricted operation of open amusements along its boardwalk. On the contrary, we are inclined to the belief that the problem may not be dominantly aesthetic but may directly involve considerations of health, safety, morals and public convenience well within the universally accepted concepts of the welfare clause. Cf. Piaget-Del Corp. v. Kulik, 133 N.J.L. 485
(Sup. Ct. 1945); 134 N.J.L. 147 (Sup. Ct. 1946). However, the real difficulty *Page 226 
in the present case is that no attempt has been made by the borough to adopt a regulation reasonably calculated to meet the problem as thus stated. Instead, it adopted section 811 which, in comprehensive fashion, seeks to wipe out all business anywhere in the borough (apart from four very limited classes) which might require operation, in whole or in part, in the open. Thus, the ordinance, under its terms, is broad enough to exclude the customary gasoline station [Cf. First Church of Christ v. Boardof Adjustment, 127 N.J.L. 325 (Sup. Ct. 1941); affirmed,128 N.J.L. 376 (E. A. 1942)], and the familiar "Good Humor man" [see New Jersey Good Humor, Inc., v. Bradley Beach,124 N.J.L. 162 (E. A. 1940)]. Similarly, it would exclude terrace service at hotels and restaurants and, indeed, numerous legitimate and acceptable business operations outside the confines of the "cover of permanent buildings." We believe the restriction, to the extent imposed, is unnecessary and has no reasonable relation to such public purposes as may properly be sought to be served. See Mr. Justice Heher's remarks in NewJersey Good Humor, Inc., v. Bradley Beach, supra (at p. 168):
"The restraints and regulations imposed for the general good and welfare must needs have the virtue of reasonableness. There cannot be, in the name of police regulation, an unreasonable and oppressive curtailment of personal or property rights. A measure that goes fairly beyond the public need designed to be served does not take the category of a valid police regulation. While the term `need,' as so used, is not strictly defined, the relief sought must come within the compass of a reasonable requirement for the common good and welfare. Hourigan v. Township of NorthBergen, 113 N.J.L. 143; Mansfield Swett, Inc., v. WestOrange, supra."
Cf. New Jersey Used Car Trade Association v. Magee,1 N.J. Super. 371, 61 A.2d 751 (Ch. Div. 1948).
We have concluded that section 811 is unreasonable on its face and that the appellant's conviction thereunder must be set aside. Accordingly, we find no occasion to consider other issues presented.
The judgment below is reversed. *Page 227