N. J. GOOD HUMOR, INC., PROSECUTOR-APPELLANT, v. BOARD OF COMMISSIONERS OF THE BOROUGH OF BRADLEY BEACH ET AL., DEFENDANTS-RESPONDENTS.

Argued October 19, 1939—Decided January 25, 1940.

164

For the appellant, *Kristeller & Zucker* and *Milton, McNulty & Augelli* (*John Milton,* of counsel).

For the respondents, *Joseph R. Megill* (*Ward Kremer,* of counsel).

The opinion of the court was delivered by

HEHER, J.   The fundamental question at issue is the validity of an ordinance adopted by the governing body of the Borough of Bradley Beach on June 18th, 1935, prohibiting hawking and peddling within the municipality.

The ordinance is entitled "An ordinance prohibiting hawking, peddling and vending and prohibiting the selling of goods, wares, and merchandise from house to house in the Borough of Bradley Beach, and providing a penalty for the violation thereof;" and it is thereby made unlawful "for any person, firm or corporation" (a) to "hawk, peddle or vend any goods, wares and merchandise" within the municipal boundaries, and (b) to "go from place to place or from house to house carrying for sale and exposing for sale, goods, wares, and merchandise which he, she, they or it carries either in a receptacle which he, she, they or it carries, or in any push cart, wagon, automobile, or any other vehicle whatsoever within" the municipality, saving and excepting "the sale of goods, wares, and merchandise by wholesalers to retailers for resale."

A municipal corporation is the creature of the legislature, and possesses only such rights and powers (a) as have been granted in express terms; (b) as arise by necessary or fair implication, or are incident to the powers expressly conferred, and (c) as are essential to the declared objects and purposes of the municipality—not merely convenient, but indispensable.   It has no inherent jurisdiction to make laws or adopt regulations of government; it is a government of enumerated powers, acting by a delegated authority.   Any reasonable or fair doubt of the existence of the asserted power, or any ambiguity in the statute whence it springs, or those in *pari materia,* is to be resolved against the municipality, and the power is denied.   Municipalities are to be confined within the

limits that a strict construction of the grants of powers will assign to them. And the granted powers must be exercised in a reasonable manner. *Carron* v. *Martin,* 26 *N. J. L.* 594; *Public Service Electric, &c., Co.* v. *Camden,* 118 *Id.* 245, 255; *Dartmouth College* v. *Woodward,* 4 *Wheat.* 518, 578; 4 *L. Ed.* 629; *Cooley Const. Lim* (*8th ed.*) 391, 400.

In justification of this by-law, the municipality invokes section 40:48-2 of the Revised Statutes of 1937, investing it with authority to "make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law." It is noted that this provision has its origin in article XIV, section 2, of the Home Rule act of 1917 (*Pamph. L., pp.* 319, 357), in terms clothing the municipality with legislative power to be exerted "for the good government, order, protection of persons and property, and for the preservation of the public health, safety and prosperity of the municipality and its inhabitants * * *." And the insistence is that this prohibition of hawking, peddling and vending is within the police power thus conferred, as a measure furthering "the 'safety and prosperity of the municipality and its inhabitants' and their 'safety and welfare.'" We do not hold this view.

The primary subject of inquiry is whether the ordinance, on its face, constitutes a valid exercise of local legislative power. The ordinance itself does not reveal the particular power invoked, nor the reasons for its interposition. It is now defended on two general grounds, viz.: (1) The asserted right of a "residential community" to "peace and quiet;" and (2) the alleged interest of the community in the protection of the "business and profits" of local storekeepers against the competition thereby outlawed.

(1) It is contended that this somewhat drastic measure is essential to "the 'general welfare of the municipality and its

inhabitants' or the 'prosperity of the municipality and its inhabitants.'" The argument runs thus: There are problems peculiar to seashore municipalities. In particular, it is the aim of the defendant municipality to "attract summer visitors who rent cottages or own them. The value of these properties and the rent they command is affected obviously by the character of the community and the manner in which it is maintained and governed. The prosperity of the owners of the property is most materially affected by the value of the properties they own and the rents they can secure from summer tenants. In all summer resort communities thousands of home owners occupy their houses during the eight or nine months of the so-called 'off season' and they rent them for the short summer season in the hope of securing sufficient revenues to pay the mortgage interest and taxes on the properties. The welfare of all these people is affected by the desirability of their properties for summer rental purposes. * * * The result" of a lack of power "to prohibit peddling" would be "that innumerable peddlers could ride the streets at all hours of the day crying their wares and merchandise to attract customers," and "there would be no check upon the number or character of the conveyances which might engage in these businesses," all to the detriment of "the peace and quiet of a residential community," with a consequent reduction of the rental and market values of dwellings within the municipality.

(2) It is also sustained as a measure necessary to protect the "business" and "profits" of the local "small merchants" who "own or rent properties," and "bear all the burdens of business for twelve months in the year," sometimes "doing business at a loss for eight or nine months," from "an invasion of the community during the short summer season by street peddlers," who "pay no rent, own no property and contribute nothing to the 'welfare of the municipality and its inhabitants.'" The destruction of such competition is deemed to be in "the interests of the municipality and its taxpayers and its inhabitants generally," since the economic losses of the resident merchants are reflected, so it is said, in vacant properties during the winter months, in the "lack of all year

round shopping facilities," and in "a decrease in real estate values, a diminution of incomes from real estate, and a * * * shrinkage in values and tax returns to the municipality." In this regard, defendants distinguish between "prohibition of peddling and prohibition of business." It is maintained that "the municipality, by prohibiting peddling, is not prohibiting business. It is merely regulating it."

The statute delegates a portion of sovereign power to such municipal subdivisions; and the dispositive question is whether the ordinance transcends the granted authority. We find that it does.

The enactment is not defensible as a measure to insure "the peace and quiet of a residential community." It is patently not a reasonable exercise of the police power to effect that objective. There is no substantial relation between the means employed and the end so avowed. It utterly prohibits the "hawking, peddling and vending" and the "carrying for sale and exposing for sale" of goods, wares and merchandise "from house to house" and "from place to place" within the municipal confines. Plainly, prohibition, as distinguished from regulation, is not essential to the consummation of the purported object. Moreover, the ban extends to commerce of the particular classes without regard to whether it is in fact, under the circumstances, violative of community "peace and quiet." *Compare People* v. *Kuc*, 272 *N. Y.* 72; 4 *N. E. Rep.* (2d) 939. The sweeping rule of the ordinance is manifestly not sustainable as including only a reasonable margin to insure effective enforcement of the asserted object. See *Euclid* v. *Ambler Realty Co.*, 272 *U. S.* 365; 47 *S. Ct.* 114; 71 *L. Ed.* 303.

The ground thus advanced therefore does not justify this municipal action; and it remains to consider whether the apparent discrimination in reality serves a legitimate public interest, as secondly declared, so as to impart validity to a regulation otherwise unjust and oppressive. Such is not the case.

It is not affirmed to be a police regulation for the public safety; nor would the means be reasonable and appropriate to that end, for they plainly go beyond fair needs.

Evidently, the motive for this municipal action was the overthrow of competition for the benefit of local merchants and storekeepers; and this, too, constitutes an arbitrary use of sovereign power.

The means adopted are not reasonable and appropriate to the professed end, *i. e.*, the protection of the value of real estate. There would seem to be no tangible basis for the conclusion that the elimination of hawking, peddling and vending would tend to that result. It is requisite that the common welfare be advantaged to a substantial degree to justify the exercise of the police power. *Mansfield & Swett, Inc.,* v. *West Orange,* 120 *N. J. L.* 145, 160. But however this may be, it is not within the bounds of reason to prohibit particular classes of business, lawful in themselves, for the enrichment of another class. Such subversion of competition is not in the public interest, and the police power can only be addressed to that end. As regards the class deprived of the common right to engage in trade, the enactment is arbitrary, unjust and oppressive. At common law, unfair methods of competition and combinations in restraint of trade have been from early times considered a species of fraud within the police power. Ordinances operating to restrain competition and tending to create monopolies or confer exclusive privileges are generally condemned. *McQuillan on Municipal Corporations (2d ed.),* § 773.

Broad as it is, the police power is not without its limitations. Its exertion must be directed to a legitimate end, *i. e.*, the protection of a basic interest of society rather than the mere advantage of particular individuals. *Home Building and Loan Association* v. *Blaisdell,* 290 *U. S.* 398; 54 *S. Ct.* 231; 78 *L. Ed.* 413. And it is requisite that the means employed in its exercise have a rational relation to that end, and be altogether free from arbitrariness. The restraints and regulations imposed for the general good and welfare must needs have the virtue of reasonableness. There cannot be in the name of police regulation, an unreasonable and oppressive curtailment of personal or property rights. A measure that goes fairly beyond the public need designed to be served does not take the category of a valid police regulation. While the

term "need," as so used, is not strictly defined, the relief sought must come within the compass of a reasonable requirement for the common good and welfare. *Hourigan* v. *Township of North Bergen*, 113 *N. J. L.* 143; *Mansfield & Swett, Inc.*, v. *West Orange, supra*. Mr. Justice Holmes thus stated the limitation: "It may be said in a general way that the police power extends to all the great public needs. *Camfield* v. *United States*, 167 *U. S.* 518; 42 *L. Ed.* 260; 17 *Sup. Ct. Rep.* 864. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." *Noble State Bank* v. *Haskell*, 219 *U. S.* 104; 31 *S. Ct.* 186; 55 *L. Ed.* 112. A "public exigency" justifies the imposition of reasonable restraints upon the rights of person and of property in the exercise of this sovereign power. Public control may be had only in the furtherance of a public interest. *Block* v. *Hirsh*, 256 *U. S.* 135; 41 *S. Ct.* 458; 65 *L. Ed.* 865.

And it goes without saying that an exertion of the police power, affecting personal and property rights, is nugatory unless made in good faith for the attainment of a public object within its cognizance. If the dominant purpose be the service of private interests under the cloak of the general public good, it must be adjudged a perversion of the power. The principal is universal that local legislation in the exercise of this power shall be characterized by entire good faith; if this be lacking, it will be struck down by the courts as an abuse of power. As was said in an early Massachusetts case, "the law will not allow the right of property to be invaded, under the guise of a police regulation for the preservation of health, when it is manifest that such is not the object and purpose of the regulation." *Austin* v. *Murray*, 16 *Pick.* 121, 126. See, also, *Riddle* v. *Atlantic City*, 89 *N. J. L.* 122; *Kohr Bros.* v. *Atlantic City*, 104 *Id.* 468; *McGonnell* v. *Orange*, 98 *Id.* 642; *State* v. *Lowery*, 49 *Id.* 391; *Sligh* v. *Kirkwood*, 237 *U. S.* 52; 35 *S. Ct.* 501; 59 *L. Ed.* 835; *Kruse* v. *Johnson*, 2 *Q. B.* 91; 14 *Times L. R.* 416.

The mere protection of property values does not ordinarily justify the interposition of the police power. As regards zon-

ing, the enabling statute has made it a matter of governmental concern to a limited degree. *R. S.* 1937, 40:55-30. At all events, the police power cannot be lawfully exerted in this direction unless from pressure of public necessity—where the common good and general welfare imperatively demand it. And this is manifestly not the case here. The business banned by this ordinance is not a nuisance *per se;* nor was the enactment designed to outlaw a nuisance in fact. The proscribed business is wholly lawful in character; and if such municipal inhibition be a valid exercise of the police power, there is no limit to the use to which it may be put in this direction. If the competition afforded by the practice of a lawful occupation may be thus stifled, the next step would be the exclusion of all outside commerce having its terminus in the municipality (although different considerations would obviously apply in the case of interstate trade), as a means of advancing the economic welfare of the local storekeepers to the manifest hurt of the public at large. And other extreme measures of like purpose would be within reach. Restraint of trade, without some compelling public interest to justify it, is contrary to the spirit of the common law, and is not within the police power. *Compare People* v. *Jenkins,* 202 *N. Y.* 53; 94 *N. E. Rep.* 1065; *People* v. *Kuc, supra.* Reasonable regulation for the public good of a business "affected with a public interest" is, of course, permissible under the police power. *State Board of Milk Control* v. *Newark Milk Co.,* 118 *N. J. Eq.* 504.

Nor is there any justification for this measure to be found in section 40:52-1 of the Revision, *supra.* It is not within the authority thus bestowed. Municipalities are thereby invested with power "to make, amend, repeal and enforce ordinances to license and regulate * * * hawkers, peddlers, * * * itinerant vendors of merchandise," and so on; and there is provision for the summary punishment of "any person found hawking, peddling, selling or buying any article in such municipality without a license when a license therefor is required by ordinance of the municipality."

The power to "regulate" is ordinarily confined to such reasonable restraints upon the trade or business made the subject

thereof as may be demanded by the public interest. It will not usually be construed as including the absolute prohibition of a legitimate business that may be pursued as of common right. *McConville* v. *Mayor, &c., of Jersey City,* 39 *N. J. L.* 38; *McQuillin on Municipal Corporations,* § 372. And it is to be observed that the legislature has thereby declared that the lines of trade endeavor proscribed by the ordinance under review are in no sense contrary to public policy or inimical to the public welfare, but are to be reasonably regulated in the public interest as the circumstances may demand.

It is therefore evident that the challenged municipal action was dictated by a purpose to shield the local shopkeepers from lawful competition, and thus to serve private interests in contravention of common rights; and so it must be condemned as an abuse of the police power, and therefore *ultra vires.* It does not purport to be a reasonable exercise of the police power—in the public interest by means reasonably necessary for the purpose.

The judgment of the Supreme Court is therefore reversed; and the cause is remanded for the vacation of the judgment of the Recorder's Court of the defendant municipality, and the dismissal of the complaint.

*For affirmance*—HETFIELD, WELLS, WOLFSKEIL, JJ.   3.

*For reversal*—THE CHANCELLOR, TRENCHARD, CASE, BODINE, HEHER, PERSKIE, DEAR, RAFFERTY, HAGUE, JJ.   9.