641 A.2d 541

LOUIS FANELLI, PLAINTIFF–APPELLANT, AND LOUIS SHEP-HERD, ROBERT BRIGGS, AND RAYMOND WYLIE, PLAIN-TIFFS, v. CITY OF TRENTON, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT–RESPONDENT, AND TRENTON MERCHANTS ASSOCIATION AND CENTRAL TRENTON INCORPORATED, DEFENDANTS.

Argued February 1, 1994—Decided June 7, 1994.

584

*Charles J. Casale, Jr.,* argued the cause for appellant.

*Robert J. Paci,* Assistant City Attorney, argued the cause for respondent (*Rocky L. Peterson,* City Attorney, attorney).

*Richard S. Goldman* argued the cause for *amicus curiae,* Trenton Downtown Association (*Drinker, Biddle & Reath,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

This appeal requires the Court to determine the validity of a municipal ordinance that bans hawking, peddling, or vending in a

statutorily-authorized Special Improvement District (SID). The ordinance exempts from the prohibition pushcart peddling conducted by and adjacent to restaurants that operate in the SID. Plaintiff is a food vendor holding a license under a State statute that gives armed-services veterans the right to peddle. He challenged the municipal ordinance on the grounds that it (1) exceeded the State's delegation of legislative powers to the municipality; (2) conflicted with plaintiff's statutory right to peddle; (3) violated federal and state constitutional due-process and equal-protection guarantees; and (4) violated federal and state antitrust laws. The Chancery Division upheld the validity of the ordinance and the Appellate Division affirmed. We granted plaintiff's petition for certification, 134 *N.J.* 481, 634 *A.*2d 528 (1993), and now affirm.

I

Plaintiff Louis Fanelli owns and operates a vending cart from which he sells food and beverages such as frankfurters, meatball sandwiches, doughnuts, soft drinks, and coffee. Plaintiff is licensed by the State pursuant to *N.J.S.A.* 45:24–9, which grants honorably-discharged military personnel, among others, "the right to hawk, peddle and vend any goods, wares or merchandise * * * within this State, by procuring a license * * *." Plaintiff estimates that he has held such a license for approximately twenty to thirty years.

Plaintiff's cart is five-feet long and three-and-one-half-feet wide, weighing an estimated one-thousand pounds. Plaintiff stands inside the cart when serving his customers and has no employees. He transports the cart to his desired location by securing it to a trailer hitch on his car. Once plaintiff moves the cart into position for business, the cart remains stationary.

In May 1988 plaintiff began operating his cart in the City of Trenton (the City or Trenton) at State and Montgomery Streets. That location is across the street from a pedestrian mall known as "the Commons." Both plaintiff's location and the Commons are part of a SID that Trenton created in 1986 pursuant to *N.J.S.A.*

40:56–65 to –89. See Trenton, N.J., Ordinance No. 86–27 (Apr. 1, 1986). To operate in Trenton, plaintiff had to obtain a permit at a cost of $250 and comply with the applicable regulations.

In September 1988 Trenton passed Ordinance No. 88–78, which amended the City's SID ordinance. Ordinance No. 88–78 stated in pertinent part:

[The SID ordinance] shall be and is hereby amended to provide certain limitations on the uses to be permitted in the [SID] by concessionaires, vendors, peddlers and hawkers to promote economic growth and employment within the [SID], by means of the following amendment * * *:

WHEREAS, *N.J.S.A.* 40:56–65 et seq. provides for the creation of a [SID] * * * to assist municipalities in promoting economic growth and employment within business districts; to provide the municipality with the broadest possible discretion to establish by local ordinance, self help programs most consistent with the local needs, goals and objectives; and, to permit the governing body to protect the public welfare and health and the interest of the public in the safe and effective movement of persons and to preserve and enhance the function and appearance of the business districts; and

WHEREAS, the governing body finds that vending, hawking or peddling of any foods, beverages, confections, goods, wares, merchandise or commodities of any nature * * * within the [SID] will undermine the economic growth and employment within the [SID] and will inhibit the safe, convenient and effective movement of persons and detract from the function and appearance of the [SID]; and

WHEREAS, the governing body finds that vending, hawking or peddling of any foods, beverages, confections, goods, wares[,] merchandise or commodities of any nature * * * within the [SID] should be prohibited unless specifically authorized by [the] City Council pursuant to rules and regulations formally adopted by [the] City Council in accordance with the standards enunciated in *N.J.S.A.* 40:56–65 et seq.

NOW THEREFORE, the Council of the City of Trenton ordain[s]:

\*     \*     \*     \*

* * * No person shall engage in hawking, peddling or vending of any foods, beverages, confections, goods, wares[,] merchandise or commodities of any nature or description on the streets and sidewalks within the City of Trenton's [SID] unless such use, and the location thereof, has been specifically authorized by [the] City Council pursuant to rules and regulations formally adopted by [the] City Council in accordance with the standards enunciated in *N.J.S.A.* 40:56–65 et seq. This ordinance shall not prohibit sales activities conducted by a person holding a license to operate a restaurant from operating a pushcart on a sidewalk immediately adjacent to a licensed premises * * *.

Plaintiff operated his cart at the State-and-Montgomery location until October 1988, when he learned of the ordinance and ceased

operating in Trenton. Plaintiff sought a temporary restraint on enforcement of the ordinance through an order to show cause, but was denied injunctive relief. Subsequently, plaintiff obtained leave to amend an existing complaint challenging another Trenton ordinance [1] to add challenges to the validity of the SID ordinance. In a second amended complaint filed in January 1989, plaintiff added a count for antitrust violations.

Plaintiff testified at trial that the Commons area was a prime location for his food-vending business because its shops attract lunchtime pedestrian traffic from nearby office buildings. Plaintiff's testimony also suggested that other desirable locations not within the SID were available to vendors in Trenton, including one at Front and Stockton Streets to which plaintiff had relocated in March 1989. (We note that a subsequent amendment to the SID ordinance in March 1993 altered the SID's boundaries so that it now encompasses the Front-and-Stockton location. Trenton, N.J., Ordinance No. 93–27 (Mar. 5, 1993).) In addition to plaintiff's testimony, the trial court admitted into evidence transcripts of City Council meetings prepared by plaintiff's counsel suggesting that the primary purpose of the vending ban was to protect existing stores and restaurants from competition.

The Chancery Division rejected plaintiff's challenges to the ordinance. The court determined that the ordinance had been authorized under the State's police power and established pursuant to the authority delegated to municipalities by the statutes authorizing the establishment of SIDs. In addition, the court found that the ordinance survived equal-protection and due-process challenges as an economic regulation that was rationally

---

[1] In June 1988, prior to the adoption of the ordinance prohibiting vending in the SID, Trenton had adopted Ordinance No. 88–39, which prohibited hawking, peddling, and vending throughout the City, except for eight discreet locations to which individual operators were to be assigned. Plaintiff challenged that ordinance and was granted temporary injunctive relief. The parties consented to continue that relief and subsequently Trenton stipulated that it would not enforce that ordinance and intended to repeal it. We do not consider the validity of that ordinance in this appeal.

related to achieving a legitimate public interest. Finally, the court concluded that state-action immunity shielded the ordinance from attack under both federal and state antitrust laws. The Appellate Division affirmed substantially for the reasons expressed in the Chancery Division opinion.

## II

In considering whether the City's ordinance is a valid exercise of authority granted by the State, we bear in mind that municipal ordinances enjoy a presumption of validity. *Brown v. City of Newark*, 113 *N.J.* 565, 571, 552 *A*.2d 125 (1989). Our cases have established that a municipal prohibition on peddling that serves no purpose other than to protect local businesses from competition is an invalid exercise of a municipality's police power. See, *e.g., id.* at 583–84, 552 *A*.2d 125; *Moyant v. Borough of Paramus*, 30 *N.J.* 528, 544–45, 154 *A*.2d 9 (1959); *N.J. Good Humor, Inc. v. Board of Comm'rs*, 124 *N.J.L.* 162, 168–71, 11 *A*.2d 113 (E. & A.1940). However, we need not apply that principle here because authorization for Trenton's ordinance derives from the SID statutes, *N.J.S.A.* 40:56–65 to –89, rather than from the general police power or the authority to license and regulate. Specifically, *N.J.S.A.* 40:56–77 states:

> b. Upon adoption of a pedestrian mall or special improvement district ordinance, the governing body may, from time to time, provide for the control and regulation of:
>
> \*     \*     \*     \*
>
> (2) The uses to be permitted on the mall or special improvement district property by \* \* \* concessionaires, vendors and others to serve the convenience and enjoyment of pedestrians and the location of such uses[.]

Plaintiff argues that that language, as well as language in subsection a that sets forth as permitted uses of SID property "any purpose or activity [that] will enhance the movement, safety, convenience or enjoyment of pedestrians," *N.J.S.A.* 40:56–77a, demonstrates that the Legislature authorized only regulation of uses that had the purpose of promoting the interests of pedestrians. According to plaintiff, the City Council never considered the

interests of pedestrians in enacting the vending ban. Rather, plaintiff contends, the City Council considered only the welfare of businesses located in the SID, noting the ordinance's exemption from the vending ban for existing merchants and restaurants as well as statements made during City Council meetings.

Plaintiff's argument overlooks the history of the pertinent statutes and the legislative findings that inform their interpretation. As originally enacted, *L.*1972, *c.* 134, the statutes that now authorize the creation of SIDs provided only for the creation of pedestrian malls. The legislative findings underlying that enactment stressed concerns about pedestrian mobility and vehicular-traffic congestion. *See N.J.S.A.* 40:56–65a. In 1984, the Legislature amended the pedestrian-mall statutes to authorize the creation of SIDs and district management corporations to manage them. *L.*1984, *c.* 151. Among the various amendments was the following addition to the legislative findings in *N.J.S.A.* 40:56–65:

> b. The Legislature further finds: (1) that district management corporations may assist municipalities in promoting economic growth and employment within business districts; (2) that municipalities should be encouraged to create self-financing special improvement districts and designated district management corporations to execute self-help programs to enhance their local business climates; and (3) that municipalities should be given the broadest possible discretion in establishing by local ordinance the self-help programs most consistent with their local needs, goals and objectives.

Clearly, the Legislature's authorization of the creation of SIDs was driven by a desire to promote economic growth in local business districts and was not restricted to concerns related to pedestrians. *See* Office of the Governor, *News Release on Senate Bill No. 1680* (Sept. 10, 1984) ("The legislation *extends* the currently-held authority of municipalities to create pedestrian malls as a local business improvement project. The creation of special improvement districts would be an *additional* method of revitalizing older downtown shopping districts." (emphasis added)). Because the 1984 amendments made the directives in *N.J.S.A.* 40:56–77 regarding permitted uses and the regulation of peddling applicable to SID property, see *L.*1984, *c.* 151, § 13, we must read

those directives in the context of the distinct SID purposes set forth in *N.J.S.A.* 40:56–65b.

An integral part of the promotion of economic growth and employment in downtown business districts is the creation of a commercial climate that encourages stores to open and remain in business. The legislation authorizing SIDs enables local businesses to work together to enhance economic growth and employment. Indeed, the businesses located in Trenton's SID pay a special assessment of up to 4.5% of their annual property tax or payments in lieu of tax to finance the SID programs and improvements. Trenton, N.J., Ordinance No. 86–32 (Apr. 17, 1986).

■ In determining whether Trenton's ordinance is authorized by the SID statute, we do not pass on the wisdom of the City's plan. We need decide only whether the ordinance represents a reasonable exercise of the Legislature's delegation of authority to municipalities in enacting the SID statute. *See Riggs v. Township of Long Beach,* 109 *N.J.* 601, 610–11, 538 *A.*2d 808 (1988). Furthermore, we interpret those delegated powers broadly. See *N.J. Const.* art. 4, § 7, ¶ 11.

An examination of the objectives and implementing provisions of Trenton's ordinance demonstrates that that ordinance is a valid exercise of the authority delegated to the City in the SID statute. To the extent that the purpose of the ordinance is to promote business establishments that will thrive, pay taxes, and provide employment, the ordinance furthers the objective of the economic revitalization of downtown shopping areas, and thus is authorized under a broad construction of the regulatory powers delegated to municipalities by the SID statutes. In addition, the ordinance's limitation on pushcart vending to areas adjacent to established restaurants is consistent with another municipal ordinance permitting the display and sale of goods on the sidewalk abutting existing businesses within the SID, and furthers the statutory purpose of promoting the movement of pedestrian traffic within the SID.

### III

■ We also conclude that the ban does not conflict with the statute granting veterans the right to peddle, *N.J.S.A.* 45:24–9. The last paragraph of that provision states that "[h]awking, peddling and vending * * * may be regulated by municipal ordinance * * *." We note that the City's ordinance does not prohibit peddlers from operating in Trenton. Rather, it reasonably limits the areas in which they may operate, and thus is properly characterized as a regulation. *See N.J. Good Humor, supra,* 124 *N.J.L.* at 167, 11 *A.*2d 113 (distinguishing municipal prohibition of peddling from regulation).

Because the SID statute authorizes municipalities to ban peddlers within the SID, we consider whether that authorization supersedes the statutory provisions granting veterans the right to peddle. *See In re Boyan,* 127 *N.J.* 266, 268–69, 604 *A.*2d 98 (1992). We note that the SID statute specifically authorizes municipal "control and regulation" of "concessionaires, vendors and others" within the SID. *N.J.S.A.* 40:56–77b(2). We view that authorization as a specific limitation on the general right granted in the veteran-vendor statute. To the extent that a conflict exists between the two statutes, we have no doubt that the Legislature intended that the SID statute would prevail. *See Kingsley v. Wes Outdoor Advertising Co.,* 55 *N.J.* 336, 339, 262 *A.*2d 193 (1970); *State v. Daquino,* 56 *N.J.Super.* 230, 240, 152 *A.*2d 377 (App.Div.), *certif. denied,* 30 *N.J.* 603, 154 *A.*2d 675 (1959), *cert. denied,* 361 *U.S.* 944, 80 *S.Ct.* 407, 4 *L.Ed.*2d 363 (1960).

### IV

■ We next consider plaintiff's claim that the ordinance violates federal and state constitutional due-process and equal-protection rights. We analyze both federal constitutional claims and the state due-process claim under minimum scrutiny, because the ordinance is an economic regulation that does not affect a suspect class. Thus, the statutory authorization need be only rationally related to the achievement of a legitimate state objec-

tive. *See Brown, supra,* 113 *N.J.* at 572–73, 552 *A.*2d 125. We consider plaintiff's state equal-protection challenge under the balancing test adopted for analysis of such claims. See *id.* at 573, 552 *A.*2d 125.

In *New Orleans v. Dukes,* 427 *U.S.* 297, 96 *S.Ct.* 2513, 49 *L.Ed.*2d 511 (1976), the United States Supreme Court rejected an equal-protection challenge to a New Orleans ordinance that banned all pushcart vending in the French Quarter but exempted vendors who had operated continually for eight years. The Court applied minimum scrutiny and determined that the legitimacy of the purpose of preserving " 'the appearance and custom valued by the Quarter's residents and attractive to tourists' " was "obvious" and that the vending ban "plainly" was rationally related to that objective. *Id.* at 304, 96 *S.Ct.* at 2517, 49 *L.Ed.*2d at 517 (quoting *Dukes v. City of New Orleans,* 501 *F.*2d 706, 709 (5th Cir.1974), *rev'd,* 427 *U.S.* 297, 96 *S.Ct.* 2513, 49 *L.Ed.*2d 511 (1976)).

Similarly, revitalization of the downtown shopping districts in New Jersey's cities is a legitimate state objective. The demise of a city's downtown shopping area depresses public morale and diminishes a city's ability to retain and attract businesses and residents, damaging its economic vitality. Furthermore, an ordinance that prohibits independent vendors from operating in a downtown area selected for revitalization is rationally related to that end. The ordinance creates an economic climate within the SID designed to promote, attract, and retain resident businesses. The ban also promotes the flow of pedestrian traffic by limiting outdoor vending to operations that are adjacent to resident businesses. As demonstrated in *Dukes, supra,* the fact that the City Council exempted certain vending from the ban does not render the ordinance irrational. *See id.* at 305, 96 *S.Ct.* at 2517–18, 49 *L.Ed.*2d at 518. Thus, we conclude that under minimum-scrutiny analysis the ordinance survives plaintiff's federal and state due-process claims and his federal equal-protection claim.

■ Furthermore, the ordinance survives plaintiff's state equal-protection challenge because "on balance, the regulation, consider-

ing the public need, does not unduly restrict the right of * * * peddlers to engage in their business." *Brown, supra,* 113 *N.J.* at 574, 552 *A.2d* 125. In reaching that conclusion, we appreciate plaintiff's genuine concern that the ordinance will affect his ability to prosper by denying him the right to locate his cart within the SID. Nevertheless, we infer that the continued availability to plaintiff of other locations in Trenton and the public interest in promoting business stability within the SID outweigh the potential harm that plaintiff may suffer by being excluded from the SID.

## V

Plaintiff's final argument is that Trenton's selective ban on vending violates sections one and two of the Sherman Act, 15 *U.S.C.A.* §§ 1, 2, and the comparable New Jersey antitrust statutes. See *N.J.S.A.* 56:9-3, -4. We conclude that the "state action" doctrine immunizes the City's ordinance from challenge under the federal antitrust laws, *see Parker v. Brown,* 317 *U.S.* 341, 63 *S.Ct.* 307, 87 *L.Ed.* 315 (1943), and that the ordinance does not violate the New Jersey Antitrust Act, *N.J.S.A.* 56:9-1 to -19. *See N.J.S.A.* 56:9-5c (stating that New Jersey Antitrust Act does not apply to activity "directed, authorized or permitted" by state law).

This Court has previously applied the state-action-immunity doctrine to uphold regulations that were alleged to violate the federal antitrust laws. *See Joseph H. Reinfeld, Inc. v. Schieffelin & Co.,* 94 *N.J.* 400, 416–18, 466 *A.2d* 563 (1983) (applying state-action immunity to agency order requiring wholesalers to boycott liquor importer that had violated statute prohibiting importers from discriminating among wholesalers); *Bally Mfg. Corp. v. New Jersey Casino Control Comm'n,* 85 *N.J.* 325, 336, 426 *A.2d* 1000 (1981) (applying state-action immunity to agency regulation limiting percentage of slot machines that casino could purchase from single supplier); *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 565–66, 384 *A.2d* 795 (1978) (applying state-action immunity to regulatory price guidelines promulgated by

special state committee and approved by state medical board); *see also Monmouth Chrysler–Plymouth, Inc. v. Chrysler Corp.*, 102 *N.J.* 485, 493–94, 509 *A.*2d 161 (1986) (noting applicability of state-action immunity to state statute that authorized state agency to deny placement of automobile dealerships in locations that would threaten stability of existing same-line dealerships).

Although we consider for the first time the applicability of the state-action doctrine to a municipal ordinance, we need only briefly recount the doctrine's well-established principles, which are set forth elsewhere in sufficient detail. See, *e.g., Cine 42nd Street Theater Corp. v. Nederlander Org., Inc.*, 790 *F.*2d 1032, 1042–44 (2d Cir.1986); *Monarch Entertainment Bureau, Inc. v. New Jersey Highway Auth.*, 715 *F.Supp.* 1290, 1293–96 (D.N.J.), *aff'd,* 893 *F.*2d 1331 (3d Cir.1989); *Joseph H. Reinfeld, Inc., supra,* 94 *N.J.* at 416–18, 466 *A.*2d 563. The United States Supreme Court first announced the state-action exception to the Sherman Act in *Parker, supra,* determining that "[t]he Sherman Act * * * gives no hint that it was intended to restrain state action or official action directed by a state." 317 *U.S.* at 351, 63 *S.Ct.* at 313, 87 *L.Ed.* at 326. Subsequent decisions sought to define the scope of the immunity for situations in which entities to which the state had delegated authority instituted the alleged anticompetitive restraints. In *City of Lafayette v. Louisiana Power & Light Co.*, 435 *U.S.* 389, 98 *S.Ct.* 1123, 55 *L.Ed.*2d 364 (1978), the Court determined that for a municipality to enjoy state-action immunity, the challenged municipal action must have been implemented "pursuant to state policy to displace competition with regulation * * *." *Id.* at 413, 98 *S.Ct.* at 1137, 55 *L.Ed.*2d at 383. The Court suggested a two-prong test, which required that the anticompetitive action be (1) "clearly articulated and affirmatively expressed as state policy" and (2) "actively supervised by the [State] as the policymaker." *Id.* at 410, 98 *S.Ct.* at 1135, 55 *L.Ed.*2d at 381 (discussing *Bates v. State Bar*, 433 *U.S.* 350, 97 *S.Ct.* 2691, 53 *L.Ed.*2d 810 (1977)).

However, in *Town of Hallie v. City of Eau Claire,* 471 *U.S.* 34, 105 *S.Ct.* 1713, 85 *L.Ed.*2d 24 (1985), the Court clarified the extent to which that test applied to municipalities. First, the Court expressly limited the requirement of active supervision to situations in which the entity implementing the anticompetitive regulation included private actors that could benefit individually from the anticompetitive effects. *Id.* at 46–47, 105 *S.Ct.* at 1720, 85 *L.Ed.*2d at 34. The Court concluded that the active-supervision requirement "should not be imposed in cases in which the actor is a municipality." *Id.* at 46, 105 *S.Ct.* at 1720, 85 *L.Ed.*2d at 34.

More importantly, with respect to the requirement that state policy to restrain trade be "clearly articulated and affirmatively expressed," the Court stated that "in proving that a state policy to displace competition exists, the municipality need not 'be able to point to a specific, detailed legislative authorization' in order to assert a successful [*Parker*] defense to an antitrust suit." *Id.* at 39, 105 *S.Ct.* at 1716, 85 *L.Ed.*2d at 29 (quoting *Louisiana Power & Light Co., supra,* 435 *U.S.* at 415, 98 *S.Ct.* at 1138, 55 *L.Ed.*2d at 384). Rather, "It is enough * * * if suppression of competition is the 'foreseeable result' of what the statute authorizes." *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 *U.S.* 365, 373, 111 *S.Ct.* 1344, 1350, 113 *L.Ed.*2d 382, 393 (1991) (quoting *Hallie, supra,* 471 *U.S.* at 42, 105 *S.Ct.* at 1718, 85 *L.Ed.*2d at 31).

Applying those principles, we conclude that Trenton's ban on peddlers within the SID is immune from federal antitrust challenge under the state-action doctrine. As noted, *supra* at 589–91, 641 *A.*2d at 544–45, the SID statutes specifically authorize a city to regulate peddling to further its economic-revitalization policies. That authorization clearly meets the *Hallie* requirement that the anticompetitive action be a foreseeable result of the state authorization.

For example, in *Omni Outdoor Advertising, supra,* the Supreme Court applied state-action immunity to uphold a city zoning ordinance that restricted the construction of billboards. The effect of the ordinance was to preserve the ninety-five-percent

market share enjoyed by a family-run billboard company with long-standing ties to the community and the city government. The Court first rejected the plaintiff's argument that the South Carolina zoning statutes had not authorized the city's ordinance because the ordinance had not been passed to further the statutory purpose of promoting the " 'health, safety, morals or the general welfare of the community.' " 499 U.S. at 371, 111 S.Ct. at 1349, 113 L.Ed.2d at 392 (quoting S.C.Code Ann. § 5–23–10 (Law. Co-op.1976)). The Court concluded that for purposes of state-action analysis, the statutory authorization to the city to regulate uses was sufficient to establish that the city ordinance had been authorized by the state. Determining whether in fact the ordinance had been passed to further the statutory purpose or in accordance with procedural requirements was unnecessary for state-action analysis. Id. at 371–72, 111 S.Ct. at 1349–50, 113 L.Ed.2d at 392–93. The Court then determined that the anticompetitive effects were the foreseeable result of the zoning statutes' authorization to municipalities to regulate uses. Id. at 373, 111 S.Ct. at 1350, 113 L.Ed.2d at 393.

Similarly, the authorization in N.J.S.A. 40:56–77b(2) to control and regulate "[t]he uses to be permitted on the * * * [SID] property by * * * concessionaires, vendors, and others" contemplates that such control and regulation may have an anticompetitive effect. We need not find that the "delegating statute explicitly permits the displacement of competition." Omni Outdoor Advertising, supra, 499 U.S. at 372, 111 S.Ct. at 1350, 113 L.Ed.2d at 393. Therefore, we conclude that ordinances enacted pursuant to the SID authorization are entitled to state-action immunity from federal antitrust liability. We note that our conclusion that the City's ordinance is immune from challenge under the federal antitrust laws does not imply that the ordinance would violate those laws were immunity not available. See Fisher v. City of Berkeley, 475 U.S. 260, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986) (holding that restraint imposed unilaterally by government does not violate section one of Sherman Act because concerted-action element is lacking).

Finally we reject plaintiff's state antitrust claim. *N.J.S.A.* 56:9–5c states that the New Jersey Antitrust Act (the Act) "shall not apply to any activity directed, authorized or permitted by any law of this State that is in conflict or inconsistent with the provisions" of the Act. Therefore, a necessary premise to plaintiff's state antitrust claim is that Trenton's ordinance is not "directed, authorized or permitted" by State law. Because we have concluded that the ordinance is authorized by the SID statutes, see *supra* at 589–91, 641 *A.*2d at 545–46, plaintiff's argument on this claim must fail. See *Bally Mfg. Corp., supra,* 85 *N.J.* at 335, 426 *A.*2d 1000.

## VI

In sum, Trenton's ban on independent peddlers within the SID furthers the policies of the SID statutes and is authorized by *N.J.S.A.* 40:56–77b(2). Furthermore, as a rational means of achieving the legitimate statutory objective of revitalizing downtown shopping districts, the ordinance survives both state and federal due-process and equal-protection challenges. Finally, because the city ordinance is authorized by the SID statutes and the anticompetitive effect of the ban is a foreseeable result of that authorization, the ordinance does not violate the state antitrust laws and constitutes state action that is immune from challenge under the federal antitrust laws.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, and GARIBALDI and STEIN—7.

*Opposed*—None.