860 A.2d 475 (2004)
373 N.J. Super. 10
Peter SINGER, Peter Wilanin, Tamara Gund, Carl Mayer, Emily Cook, Bruce Afran, Virginia Wiener, Jeff Gorman, Karen Cotton, Herb Greenberg, Sunny Greenberg, Laura Goldblatt, Bonnie Tivenan, Chad Conseugra, Nancy Lee Kern, Kenneth R. Kern, David Macrae, Sheila Macrae, Joyce Dailey, Scott Salus, Arnold Lazarus, John Tolchin through his parents Neil Tolchin and Susan Danoff, Neil Tolchin, Susan Danoff, Josh Pughe and Zack Pughe through their mother Roberta Pughe, Roberta Pughe, Robert Lohman and Anna Finzi, Plaintiffs-Appellants, and
New Jersey Animal Rights Alliance Mercer County Deer Alliance, Joyce Carol Oates, Michael Hamilton, Bill Laznovsky, Edith Laznovksy, Julia Bernheim, Bob Kubiak and The New Jersey Society for Prevention of Cruelty to Animals, Plaintiffs,
v.
The TOWNSHIP OF PRINCETON, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 2004.
Decided November 18, 2004.
*478 Bruce I. Afran, Princeton, argued the cause for appellants (Mr. Afran and Falk Engel, attorneys).
Trishka Waterbury, Princeton, argued the cause for respondent (Mason, Griffin & Pierson, attorneys, of counsel; Ms. Waterbury and Jason Bundick, on the brief).
Before Judges SKILLMAN, COLLESTER and PARRILLO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
At issue is the constitutionality of a Princeton Township (Township) ordinance prohibiting the purposeful or knowing feeding of wild deer on public and private lands throughout the Township. Plaintiffs are twenty-one Township residents who challenge the ordinance on the grounds that it arbitrarily and unreasonably deprives them of their property right to feed wild deer on their land; is not sufficiently clear; and extends further than is necessary to fulfill the municipality's interest. We are satisfied that there is no constitutional infirmity inherent in the ordinance.
The history of the State's efforts to comprehensively address deer management was detailed in our earlier opinion, Mercer County Deer Alliance v. New Jersey Dep't of Env't Prot., 349 N.J.Super. 440, 793 A.2d 847 (App.Div.2002), and culminated in the enactment of N.J.S.A. 23:4-42.3 to -42.8 (Act), *479 effective June 30, 2000. The Act allows a locality to apply for designation of a special deer management area, N.J.S.A. 23.4-42.3(a), and provides for the issuance of a permit for implementation of an approved community-based deer management plan. N.J.S.A. 23.4-42.5 to -42.6.
Pursuant to the Act, the Township applied to the Division of Fish, Game and Wildlife in the Department of Environmental Protection (Division) for designation as a special deer management area and for a permit to implement its five-year comprehensive deer management plan. Approvals were obtained, and a permit was issued on November 20, 2001, authorizing the Township, during the winter 2001-2002 season, to eliminate deer by, among other means, a method known as "netting and bolting."
As part of its comprehensive plan, on November 26, 2001, the Township adopted Ordinance 2001-25, at issue here, which provides in pertinent part:
No person shall purposely or knowingly, as said terms are defined in Title 2C of the New Jersey Revised Statutes, feed wild white-tailed deer ... in said township, on lands either publicly or privately owned. It shall be presumed that the person is purposely or knowingly feeding deer unless the feed is placed on a platform that is raised at least four feet off the ground or is placed in a feeder whose opening is sufficiently restricted so as to prevent deer from accessing the feed.
In recognition that overpopulation was not only threatening the viability of the deer herds, but was also causing ecological and environmental degradation, landscape damage, the spread of Lyme disease, and an increase in vehicular accidents, the preamble to the ordinance states:
WHEREAS, the Township of Princeton remains concerned with the significant impact of the growth of the white-tailed deer population inhabiting the Princeton community, including deer/vehicle collisions, Lyme disease, the reduction and/or elimination of native plant materials and habitat for other wild animals and the erosion of stream banks, and damage to ornamental plantings within said community; and
WHEREAS, the feeding of deer has been shown to increase the concentration of deer in the area of feeding, thereby increasing the likelihood of deer/vehicle collisions in the vicinity, increasing the local number of nymphal deer ticks, and increasing damage to vegetation and landscaping nearby, and is therefore counterproductive to the Township's goals of reducing the local deer population within the municipality and its impact on the community; and
WHEREAS, the feeding of deer can be detrimental to the overall health and well-being of the deer[ ].
As is evident from the prefatory language, the Township considered a feeding ban necessary to properly manage its wild deer population and to control associated problems.
On December 13, 2001, plaintiffs filed a complaint in the Chancery Division seeking to enjoin the Township from implementing its 2001-2002 deer management plan. All the substantive counts, save one, dealt with that part of the plan involving the "net and bolt" and "sniper" methods of eliminating deer and were eventually dismissed. We affirmed the dismissal in Mercer County Deer Alliance, supra, 349 N.J.Super. at 444-45, 793 A.2d at 849-50. The remaining count, challenging the constitutionality of Ordinance 2001-25, was transferred to the Law Division, where a two-day hearing ensued, during which expert and other testimony was adduced on behalf of plaintiffs and the Township. At *480 the conclusion of the hearing, the judge dismissed the remaining count of plaintiffs' complaint and upheld the validity of Ordinance 2001-25 with one minor exception. The ordinance's reference to a "four-foot platform" was modified to provide instead for a four-foot platform with a lip, or a five-foot platform. The Township subsequently amended the ordinance to conform with the court's order. This appeal follows.
Plaintiffs' chief constitutional claim is that Ordinance 2001-25 violates their substantive due process rights because it arbitrarily and unreasonably deprives them of their property right to feed wild deer on their land. To demonstrate arbitrariness, they argue that the feeding ban fails to address the primary reasons deer are thriving in the Township, namely, the presence of gardens, lawns, and ornamental vegetation, and instead targets only a small number of residents who put out small amounts of food. Such a ban, plaintiffs contend, burdens a fundamental property right and must fail because it bears no "real and substantial" relationship to the ordinance's stated objective. We disagree.
We commence the analysis of plaintiffs' constitutional claim by reference to several well-settled principles. First and foremost, there is a strong presumption in favor of the validity of legislative enactments, including municipal ordinances. Fanelli v. City of Trenton, 135 N.J. 582, 589, 641 A.2d 541, 544-45 (1994); State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 45-46, 590 A.2d 191, 197-98 (1991); Brown v. City of Newark, 113 N.J. 565, 571, 552 A.2d 125, 129-29 (1989). While the presumption may be rebutted, the affirmative burden placed upon a party seeking to overturn a statute or ordinance is a heavy one. Fanelli, supra, 135 N.J. at 589, 641 A.2d at 544-45; State Farm Mut. Auto. Ins. Co., supra, 124 N.J. at 45-46, 590 A.2d at 197-98; Quick Chek Food Stores v. Springfield Tp., 83 N.J. 438, 447, 416 A.2d 840, 845 (1980); State v. Golin, 363 N.J.Super. 474, 481-82, 833 A.2d 660, 664 (App.Div.2003). The presumption is not overcome, and a legislative enactment will not be declared void unless its repugnancy to the Constitution is so manifest as to leave no room for reasonable doubt. Paul Kimball Hosp. v. Brick Tp. Hosp., 86 N.J. 429, 447, 432 A.2d 36, 45 (1981); Brunetti v. Borough of New Milford, 68 N.J. 576, 599, 350 A.2d 19, 31 (1975).
This presumption of validity is particularly strong in the realm of legislative enactments protective of the public health, safety, or welfare. In re C.V.S. Pharmacy Wayne, 116 N.J. 490, 497, 561 A.2d 1160, 1164 (1989), cert. denied, 493 U.S. 1045, 110 S.Ct. 841, 107 L.Ed.2d 836 (1990). Clearly, a municipality has the power, in the interests of the common good, to enact all manner of laws reasonably designed for the protection of the public health, welfare, and safety, albeit not so as to violate a fundamental constitutional right. Gundaker Cent. Motors v. Gassert, 23 N.J. 71, 78-79, 127 A.2d 566, 570-71 (1956), appeal dismissed, 354 U.S. 933, 77 S.Ct. 1397, 1 L.Ed.2d 1533 (1957); Gallagher v. City of Bayonne, 106 N.J.Super. 401, 405, 256 A.2d 61, 63 (App.Div.), aff'd o.b., 55 N.J. 159, 259 A.2d 912 (1969). And, in the exercise of the police power, the municipality is presumed to have acted upon adequate factual support. Hutton Park Gardens v. West Orange Town Council, 68 N.J. 543, 564, 350 A.2d 1, 12 (1975). Indeed,
[t]his presumption can be overcome only by proofs that preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known which would rationally *481 support a conclusion that the enactment is in the public interest.... The judiciary will not evaluate the weight of the evidence for or against the enactment nor review the wisdom of any determination of policy which the legislative body might have made.
[Id. at 565, 350 A.2d at 12-13.]
It is equally well-settled that the guarantee of substantive due process requires only that the legislative enactment not be unreasonable, arbitrary or capricious and that the means selected to achieve the governmental objectives bear a rational relationship to these objectives. In re Plan for Orderly Withdrawal from New Jersey of Twin City Fire Ins. Co., 129 N.J. 389, 406, 609 A.2d 1248, 1257-58 (1992), cert. denied, 506 U.S. 1086, 113 S.Ct. 1066, 122 L.Ed.2d 370 (1993); Greenberg v. Kimmelman, 99 N.J. 552, 563, 494 A.2d 294, 300 (1985); Reinfeld v. Schieffelin & Co., 94 N.J. 400, 411, 466 A.2d 563, 568-69 (1983); Robson v. Rodriquez, 26 N.J. 517, 522, 141 A.2d 1, 3-4 (1958). If a statute does not affect a fundamental right, and is supported by a conceivable rational basis, it will withstand a substantive due process challenge. In re American Reliance Ins. Co., 251 N.J.Super. 541, 552, 598 A.2d 1219, 1225 (App.Div.1991), certif. denied, 127 N.J. 556, 606 A.2d 369 (1992) (citing Greenberg v. Kimmelman, supra, 99 N.J. at 563, 494 A.2d at 300); Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1, 10, 547 A.2d 691, 695 (1988); Taxpayers' Ass'n of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 364 A.2d 1016 (1976), appeal dism'd sub. nom. Feldman v. Weymouth Tp., 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). "Even if a court cannot ascertain the actual purpose of the statute, it should sustain the statute if it has any conceivable rational purpose." Auge v. New Jersey Dep't. of Corrections, 327 N.J.Super. 256, 266, 743 A.2d 315, 320 (App.Div.), certif. denied, 164 N.J. 559, 753 A.2d 1152 (2000); see also In re C.V.S., supra, 116 N.J. at 498, 561 A.2d at 1164-65. Stated somewhat differently, plaintiffs must "negative every conceivable basis which might support [the legislative arrangement]." Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940).
Despite these firmly held principles, plaintiffs urge that a higher standard of review is required because the Township's feeding ban impacts a fundamental property right. We find no such right is implicated here. Simply put, there is no cognizable property right in feeding wild deer that is subject to due process guarantees. This is because wild game belongs to the people of the State. "It has long been recognized that animals ferae naturae are not objects of private ownership, but rather belong to the State," are subject to its power to regulate and control, and are held "in a trust for all of the people of the State in their collective capacity." Aikens v. Dep't of Conservation, 387 Mich. 495, 198 N.W.2d 304, 307 (1972) (citing Geer v. Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793 (1896); Fleming v. United States, 173 Ct.Cl. 426, 352 F.2d 533 (1965)). Whatever the right to feed wild deer owned by the State, it is not a right incident to ownership of land. See Peoples Program for Endangered Species v. Sexton, 323 S.C. 526, 476 S.E.2d 477, 480 (1996). Therefore, any regulatory or legislative limitation or qualification placed on that right would not constitute an unlawful taking of property or otherwise impair a protected property interest.
Nor do we discern any other fundamental right at stake. Although the ordinance plainly regulates conduct, the regulated conduct is not sufficiently expressive nor communicative to constitute speech entitled to First Amendment protection. *482 See Binkowski v. State, 322 N.J.Super. 359, 370, 731 A.2d 64, 69 (App.Div.1999). Further, the ordinance has no economic impact on plaintiffs' use of their properties.
To be sure, an ordinance may be found unconstitutional even if it does not touch constitutionally protected conduct. Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573, 590 (1983). However, where no such right is involved, once the governmental objective is determined to be legitimate, the exercise of municipal police power need only be reasonable. Brown v. City of Newark, supra, 113 N.J. at 572, 552 A.2d at 129. Of course, in the case of a protected property right, the municipal police power may still be exercised so long as the legislated objective outweighs impairment of the property interest, D.J.L. v. Armour Pharmaceutical Co., 307 N.J.Super. 61, 76, 704 A.2d 104, 111 (Law Div.1997), and the means selected bear a "real and substantial relationship" to the desired end. Pheasant Bridge Corp. v. Tp. of Warren, 169 N.J. 282, 290, 777 A.2d 334, 339 (2001), cert. denied, 535 U.S. 1077, 122 S.Ct. 1959, 152 L.Ed.2d 1020 (2002); Roselle v. Wright, 21 N.J. 400, 409-10, 122 A.2d 506, 510-11 (1956). Measured by either standard, Ordinance 2001-25 withstands plaintiffs' facial substantive due process attack.
Here, the Township's goals in adopting the ordinance are clearly ascertainable and legitimate. Its import is to combat the adverse effects of the deer population by limiting well-documented environmental and ecological damage, disease, and deer-related motor vehicle accidents. In fact, the Township's overall deer management plan, of which Ordinance 2001-25 is a part, comports with strong statewide public policy to curtail, control, and manage the white-tailed deer population in light of the extent of the species' overpopulation. See Mercer County Deer Alliance, supra, 349 N.J.Super. at 445-46, 793 A.2d at 850-51. Given this purpose, it is surely conceivable, and entirely reasonable, for the governing body to assume, based on the available information, that feeding of deer will undoubtedly increase the concentration of deer in the area of feeding, thereby contributing to and exacerbating the problems previously identified.
Not only is this assumption rational, it was supported by the clear weight of expert authority elicited during the two-day hearing in the Law Division. While there may have been some dispute over the distinction between "recreational" and "supplemental" feeding, the fact remains, as this record demonstrates, that a wealth of professional opinion and experience supports the legislative determination.
In this regard, both Township experts testified that, based not only on their knowledge and review of scientific studies, but on their own personal observations and experience, feeding as little as ten or fifteen pounds a day will cause deer to appear in a specific location at a predictable time each day, and in larger numbers and for more extended periods of time than might otherwise occur. Indeed, studies have shown that even an amount of feed as small as twenty-five pounds can cause the deer's core home range area to shift and overlap. Such "recreational" feeding will cause the deer to modify their movements and behavior patterns, concentrate in set locations and, while there, to browse and impact ornamental plantings on neighboring properties and forests, and spread Lyme disease. Even plaintiffs' own expert acknowledges that it is not desirable to feed deer more than two gallons (eleven pounds) per day, and that if several people in the same neighborhood were each to feed even two gallons per day, the cumulative effect would be detrimental.
*483 Having identified a vital public interest, the governing body reasonably chose to use an established method, cf. N.J.S.A. 23:2A-14, for dealing with the undisputed adverse effects of deer overpopulation in the Township. The means selected  a ban on feeding wild deer  is not only rationally related, but as demonstrated by the substantial weight of scientific evidence, bears a real and substantial relationship to the legislated end.
The fact that there may be alternative or better approaches to adopt, as plaintiffs contend, does not mean that the method of control ultimately selected by the governing body in Ordinance 2001-25 is constitutionally infirm. The ordinance adopted need not be the best or only method of achieving a legitimate legislative goal, nor does it have to reflect mathematical precision, in order to withstand judicial scrutiny. In re C.V.S., supra, 116 N.J. at 498, 561 A.2d at 1164-65. Fairly debatable questions as to the propriety of the means employed to meet a problem are within the legislative province. Reingold v. Harper, 6 N.J. 182, 194, 78 A.2d 54, 59-60 (1951). "It is elementary that in any police power measure the legislative body may strike at the evil where it deems it worst, and it need not root out all harms in order to validly proscribe some." Tidewater Oil Co. v. Mayor and Council of Carteret, 84 N.J.Super. 525, 539, 202 A.2d 865, 873 (App.Div.1964), aff'd, 44 N.J. 338, 209 A.2d 105 (1965); see also CIC Corp. v. East Brunswick Tp., 266 N.J.Super. 1, 628 A.2d 753 (App.Div.1993), aff'd, 135 N.J. 121, 638 A.2d 812 (1994). The "underlying policy and wisdom of ordinances are the responsibility of the governing body." Quick Chek, supra, 83 N.J. at 447, 416 A.2d at 845 (citing Lehrhaupt v. Flynn, 140 N.J.Super. 250, 266, 356 A.2d 35, 44-45 (App.Div.1976), aff'd o.b., 75 N.J. 459, 383 A.2d 428 (1978)).
Here, the governing body could have determined, and obviously did, that the effort to control the problems associated with the Township's oversized deer population would not be as effective, or even capable of enforcement, if something short of a total ban were implemented. This determination was well within its legislative prerogative. Whether the means chosen may be more encompassing than plaintiffs deem necessary is not for us to say. We conclude, therefore, that the Township did not act arbitrarily or unreasonably in determining that a ban on all deer feeding was the appropriate response to a recognized public health, safety, and welfare problem.
Plaintiffs' residual constitutional challenges on overbreadth and vagueness grounds lack merit and warrant little discussion. The evil of an overbroad law is that "in proscribing constitutionally protected activity, it may reach farther than is permitted or necessary to fulfill the State's interests." Town Tobacconist v. Kimmelman, supra, 94 N.J. at 126 fn. 21, 462 A.2d at 594 fn. 21. The overbreadth doctrine, which is also based on substantive due process considerations, United Property Owners v. Borough of Belmar, 343 N.J.Super. 1, 34, 777 A.2d 950, 970 (App.Div.), certif. denied, 170 N.J. 390, 788 A.2d 774 (2001), is generally restricted to limitations on First Amendment rights. State v. Jones, 346 N.J.Super. 391, 406, 788 A.2d 303, 313 (App.Div.2002); City of Newark v. Tp. of Hardyston, 285 N.J.Super. 385, 398, 667 A.2d 193, 199-200 (App.Div.1995), certif. denied, 143 N.J. 518, 673 A.2d 277 (1996). Because we find that feeding deer on one's own property is not a fundamental property right, let alone one deserving of First Amendment protection, we reject plaintiffs' overbreadth claim.
*484 We also reject their vagueness claim. A law is void if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. Town Tobacconist, supra, 94 N.J. at 118, 462 A.2d at 590. The danger is twofold:
Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basic, with the attendant dangers of arbitrary and discriminatory application.
[State v. Cameron, 100 N.J. 586, 591, 498 A.2d 1217, 1219 (1985) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222, 227-28 (1972)).]
Among their various complaints in this regard, plaintiffs claim that the ordinance does not identify with sufficient specificity what type of feeder will pass muster. They take particular issue with the following provision of the ordinance: "It shall be presumed that the person is purposely or knowingly feeding deer unless the feed is placed on a platform ... or is sufficiently restricted so as to prevent deer from accessing the feed." As with the remainder of the ordinance, we find the language employed plain on its face and clear in giving notice of its proscription. The phrase "sufficiently restricted," while not mathematically precise, is given more definite meaning when considered in light of the total context and purpose of the ordinance, State v. Cameron, supra, 100 N.J. at 591, 498 A.2d at 1219, namely, as the means and manner necessary to prevent deer from accessing the feed. We conclude the Ordinance 2001-25 is sufficiently definite to satisfy due process.
Affirmed.